**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF MARYLAND**
**BALTIMORE DIVISION**

| | | |
|---|---|---|
| **In re:** | * | |
| **KIMBERLY BARTENFELDER** | * | |
| **Debtor.** | * | Chapter 13 |
| **BALDWIN LEGAL GROUP, LLC,** | * | Case No.: <u>25-20691</u> |
| **Movant,** | * | |
| **v.** | * | |
| **KIMBERLY BARTENFELDER and** | * | |
| **BRIAN A. TUCCI, TRUSTEE** | * | |
| **Respondents.** | * | |
| | * | |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

**BALDWIN LEGAL GROUP, LLC'S**
**MOTION FOR SANCTIONS PURSUANT TO RULE 9011**
**AND FOR OTHER RELIEF**

Debtor Kimberly Bartenfelder ("Debtor") filed Chapter 13 bankruptcy on November 13, 2025, despite the fact that this very court dismissed her prior Chapter 13 bankruptcy petition fewer than three months ago. Creditor Baldwin Legal Group, LLC ("Creditor" or "Baldwin Legal") will show that she has filed for bankruptcy to avail herself of the automatic stay and not for any legitimate reason.

On September 23, 2025, Creditor Baldwin Legal Group, LLC ("Creditor" or "Baldwin Legal") received from the Circuit Court for Baltimore County an Order of Default against Debtor for her failure to respond to its lawsuit against her to collect on a

1

50

promissory note that was due almost three years ago. On October 17, 2025, Debtor filed a Motion to Vacate the Order of Default. On October 24, 2025, Baldwin Legal filed its Opposition. Debtor's Motion to Vacate is now ripe for the circuit court's ruling.

On November 13, 2025, before the circuit court issued its ruling, Debtor filed the present case. In so doing, Debtor certified to this Court as follows:

> By presenting to the court … a petition, pleading, written motion, or other paper, an attorney or unrepresented party is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances,—
>
> (1) It is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation; …

FRBP 9011(b)(1). Baldwin Legal challenges this certification and brings this motion seeking sanctions against Debtor for abusing the bankruptcy process only to cause unnecessary delay and needlessly increase the cost of litigation, contrary to both the rules of this Court and the terms of the Agreement that includes the promissory note at issue.

In addition to this, Debtor's submissions in her Motion to Vacate show that the debt to Baldwin Legal is not dischargeable in bankruptcy. Debtor signed <u>both</u> an Agreement to deliver and pay on a promissory note to satisfy her debt to Baldwin Legal for attorney fees <u>and</u> the attached promissory note for the amount owed, cost of collection (including Baldwin Legal's attorney fees), interest, and late fee. Debtor has recently submitted to the Baltimore County Circuit Court that she never intended to actually pay on the promissory note despite her contractual guarantee.

Debtor, as is provable from her history of filings intended only to evade the Circuit Court for Baltimore County's ruling, continues to abuse the bankruptcy process.

2

Accordingly, Baldwin Legal will also request that this Court declare her to be a vexatious litigant. As more direct relief, Baldwin Legal asks this Court to issue directives to Debtor that would require her to fulfill her contractual obligation to assist in facilitating payment on the promissory note.

## I.      Challenge to Debtor's Certification

The procedural history of Baldwin Legal's lawsuit against Debtor nearly speaks for itself: Debtor's recent bankruptcy filings are direct responses to the Creditor's attempts to collect. Debtor abuses the bankruptcy process only to avoid judgment through the automatic stay.

On January 10, 2025, Baldwin Legal served on the Debtor its lawsuit seeking collection on a promissory note that had been due, at the latest, on March 31, 2023. *See* Exhibit A.

On January 29, 2025, filed for Chapter 13 bankruptcy in the U.S. Bankruptcy Court for the District of Maryland ("Bankruptcy Court") to avail herself of the automatic stay and not for any legitimate purpose. In support of this assertion, Baldwin Legal cites the U.S. Trustee's observation that Defendant "fail[ed] to appear at both the scheduled Meeting of Creditors and confirmation hearing" for her bankruptcy. *See* Case 25-10765, Doc 83, filed Aug. 28, 2025 at 1. Debtor did not inform Baldwin Legal of her bankruptcy filing or the imposition of an automatic stay, nor was Baldwin Legal named as a creditor in Defendant's bankruptcy. Unaware of the ongoing bankruptcy proceedings and automatic stay, Debtor proceeded to request an Order of Default, which the Baltimore County Circuit Court issued on February 20, 2025 ("February Order"). Exhibit B.

3

Because the automatic stay was in place at the time, the February Order was *void ab initio*. See, e.g., *Kochhar v. Bansal*, 222 Md.App. 32 (Md. App. 2015).

On August 3, 2025, Baldwin Legal filed a motion before the Bankruptcy Court seeking annulment of the automatic stay to validate the February Order in case no. 25−10765. This motion remains pending before the Bankruptcy Court.

On August 21, 2025, the Bankruptcy Court dismissed Debtor's bankruptcy petition in case no. 25−10765 and lifted the automatic stay, noting that Defendant "has not complied with any of [the Bankruptcy Court's] requirements." With the stay then lifted, Plaintiff requested an Order of Default for the second time on September 17, 2025.

Baltimore County Circuit Court granted the request and issued the current Order of Default on September 23, 2025. Exhibit C. Subtracting the time period in which the present case was stayed due to pending bankruptcy proceedings, Debtor had fifty-three (53) days to file an answer to the Complaint but did not do so.

On October 17, 2025, Debtor filed a motion to vacate the September Order. Exhibit D. Baldwin Legal filed its opposition to this motion on October 24, 2025. Exhibit E. Debtor's motion to vacate is now ripe for ruling. However, on November 13, 2025, Debtor filed a line alerting the parties that she has again filed Chapter 13 bankruptcy— the present case—and that an automatic stay is now in effect.

Debtor's behavior speaks for itself. Upon being served with a lawsuit on the promissory note, Debtor filed bankruptcy but did not appear at the meeting of creditors, the confirmation hearing, or follow through on any of the Bankruptcy Court's requirements. Indeed, at the July 15, 2025 hearing in case no. 25−10765, Judge Alquist

observed that there would be no viable path forward for a workable Chapter 13 plan until the Bartenfelders' divorce case was finalized. There has been no development in the divorce case since then, except for her notice to the Harford County Circuit Court that a new automatic stay is in place. Now that Baldwin Legal has opposed Debtor's motion to vacate the order of default, her motion is ripe for ruling by the Baltimore County Circuit Court. Three (3) weeks after Baldwin Legal filed its opposition to the Motion to Vacate, Debtor again filed for bankruptcy. Again, Baldwin Legal is omitted from the schedule of creditors. The petition filed in the current case is the same as the prior case with old dates scratched out, and new dates and signatures superimposed on the old documents. The timing of Debtor's filing in case no. 25−10765 and in the present bankruptcy proceedings demonstrate very plainly that she seeks the protection of an automatic stay only to avoid liability on the promissory note to Baldwin Legal. This is an abuse of the bankruptcy process for which Baldwin Legal seeks redress.

Baldwin Legal seeks payment on the promissory note from a fund established by the Harford County Circuit Court and sourced from the assets of the businesses jointly owned by Debtor and her husband during their ongoing divorce. Debtor is now abusing the bankruptcy process to avoid Baldwin Legal receiving payment. In one of her most recent filings, Debtor has essentially confessed to a fraud—that she signed an enforceable contract and promissory note to pay Baldwin Legal but never intended to abide by its terms. This itself would mean that this debt would not be dischargeable in bankruptcy.

5

## II.    Debt to Baldwin Legal is not Dischargeable

In her Motion to Vacate the September Order, Debtor argues that diagonal lines that she drew across the promissory note, above her signature, should invalidate her obligation to pay the note: "When this so-called agreement is scrutinized the lines through the document are clear. That was literally striking out the document in its entirety." Exh. D at 5. Debtor makes a strange admission here—that although she signed the Agreement and promissory note, she believed that her drawing a line through several pages of the promissory note extinguishes her legal obligation. She is incorrect and cannot escape liability unilaterally.

Contrary to her present assertions which attempt to renounce the Agreement and promissory note, Defendant previously agreed and acknowledged that the settlement terms were fair, permanent, and designed to terminate all future controversy. In pertinent part, the Agreement states:

> This Settlement Agreement ("Agreement") is entered into … by and among Baldwin|Seraina, LLC, a Maryland limited liability company [Plaintiff's former d/b/a name]; … and Kimberly Bartenfelder ("Kim") for the purpose of settling a pending controversy related to counsel fees claimed due by [Plaintiff] in connection with its representation of Kim in litigation pending before the Circuit Court of Harford County, Maryland captioned Kimberly Bartenfelder v. Thomas Bartenfelder, Case Number 12-C-17-000355 ("Litigation"), … [and six additional cases named in the Agreement's preamble]. …
>
> […]
>
> WHEREAS, Kim is in need of counsel in the Litigation, and is without any alternate source of funds to retain new counsel because she is not receiving sufficient alimony from Thomas Bartenfelder, is unable to enter and/or operate the Bartenfelder Businesses, and has no other source of income of funds to retain new counsel other than the Fee Fund; and

WHEREAS, the Parties, intending to avoid the cost and expense of a dispute over the respective fees owed to Kim's current and former attorneys, and, the parties agreeing that Kim needs representation both in the Litigation and her divorce proceedings, and having reached agreement for a distribution of fees from the Fee Fund, desire to enter into this Agreement.

NOW, THEREFORE, for good and valuable consideration, the Parties, intending legally to be bound, agree as follows:
…

3. **Payment of Balance to [Plaintiff]** Concurrently with the $150,000 payment to [Plaintiff], Kim shall deliver to [Plaintiff], … a Promissory Note in the amount of One Hundred and Eighteen Thousand One Hundred Forty-Six Dollars ($118,146.00) in the form attached hereto as Exhibit A, …

[…]

11. **Cooperation /Further Assurances**.  The Parties agree to cooperate fully and to assist in a reasonable manner in taking any and all additional action which may be necessary or appropriate to give full force and effect to the terms and intent of this Agreement, which are not inconsistent with the terms of the Agreement, without further cost or expense (other than incidental) on the part of the other.

12. **Miscellaneous.** This Agreement is entered into to further each side's respective professional, person, and financial interests, and to avoid the expense and inconvenience of further litigation. All parties have had input into the drafting of this Agreement, … . This Agreement constitutes the full and complete understanding amongst the parties and replaces all prior negotiations, discussion, offers, representations, warranties, covenants and agreements of the Parties. …

[…]

14. **Recitals** The recitals set forth above are hereby incorporated into this Agreement herein by reference and made a material part of this Agreement.

Exh. A at 1-7. By her own hand, through her own signature, Defendant made a

permanently binding agreement to pay on the terms outlined in the promissory note. She

further agreed to do all things necessary to facilitate payment. She now presents no valid

reasons as to why the terms she agreed to should not be now honored. She argues that her attempt to deceive BLG should control and that the promissory note should be invalidated due to several diagonal lines she drew. Mrs. Bartenfelder stated on record that she did not intend to honor the promissory note. This itself means that the promissory note is not dischargeable.

> (a) A discharge under section … 1328(b) of this title does not discharge an individual debtor from any debt-
> …
>
> (2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by-
>
> (A) false pretenses, a false representation, or actual fraud, ---; …

11 U.S.C. §523(a)(2)(A). If Mrs. Bartenfelder signed with the intent not to pay when due, then at a very minimum, she made a false representation by agreeing to the terms of the Agreement outlined above. Mrs. Bartenfelder's agreement to permanent settlement of the case in the Agreement, the first pages of Exhibit A, then her turnaround and attempt to renounce the second half, a promissory note with terms incorporated into the overall agreement, shows that she entered into the Agreement with false pretenses. She stated that the diagonal lines she made through the promissory note at the time she signed was based on her belief that this would invalidate her obligation to pay. Her self-admitted attempt to deceive Baldwin Legal defeats any attempt to discharge the promissory note through bankruptcy.

### III.    Debtor Should Be Found to Be a Vexatious Litigant

Debtor's current petition is intended only to delay judgment on the promissory note to Baldwin Legal. This is a fundamental misuse of the bankruptcy process. Moreover, this has driven up the amount due needlessly. Interest, late fee, and reasonable attorney fees have piled up during Debtor's bankruptcy filings. Her aim—only to delay and not to reorganize her debts—should be recognized as such and dealt with accordingly. This Court should also consider that the increasing debt also unfairly burdens Thomas Bartenfelder, whose co-owned businesses serve as the source of funds for the court-ordered Fee Fund. Although he is on record opposing Baldwin Legal's motions, the Court should consider that he should not be further burdened due to Debtor's abuse of the bankruptcy process. Debtor's delay, driving up costs for all parties, should be a basis for this Court declaring her vexatious.

### IV.    Baldwin Legal Respectfully Requests that this Court Issue Several Directives to Debtor to Resolve this Dispute and End Further Delay of Its Collection Efforts

This Court has broad power to order whatever relief is necessary in these circumstances under 11 U.S.C. § 105. Debtor has previously signed an ironclad agreement to assist in facilitating the Fee Fund but has not honored it. At the July 15, 2025 hearing, the Debtor mistakenly asked the Bankruptcy Court to grant a request to join the Bartenfelder family businesses to Harford County Circuit Court case no. 12-C-17-000355. This Court noted to the Debtor that only the Harford County Circuit Court could do that. Baldwin Legal now has pending before the Harford County Circuit Court a motion for joinder that would join the businesses as she asked.

Considering the unnecessarily complicated history of this case, Baldwin Legal requests that this Court issue orders: (1) requiring Debtor to comply with her contractual obligations to facilitate payment to Baldwin Legal, outlined partially at Exh. A at 1-7, cited above, and (2) in line with these obligations, requiring Debtor to join the current motions for joinder and for payment now pending before the Harford County Circuit Court.

Accordingly, Baldwin Legal requests:

i. That Debtor receive sanction based on her false certification that Debtor's bankruptcy petition is for any legitimate purpose, instead of its true purpose: to avoid liability on her promissory note to Baldwin Legal;

ii. That this Court find that the debt to Baldwin Legal is not dischargable in any event considering Debtor's admission that she entered into the promissory note on false pretenses or false representations;

iii. That this Court find that Debtor is a vexatious litigant based on her current abuse of the bankruptcy process;

iv. That this Court issue all necessary and appropriate order to Debtor to facilitate her obligations to cooperate to pay Baldwin Legal all amounts due under the promissory note;

v. For other such relief as the Court deems proper.

10

Date: November 22, 2025

Respectfully submitted,


_//s// Matthew J. McCarthy_____
Matthew J. McCarthy
(Bar No. 30767)
McCarthy Legal & Consulting, Inc.
9466 Georgia Avenue #1037
Silver Spring, MD 20910
Telephone (301) 550-1709
Mccarthy.legal.inc@gmail.com

*Attorney for Baldwin Legal Group, LLC*

11

## CERTIFICATE OF SERVICE

I certify that on November 22, 2025, the foregoing Motion was mailed via first

class mail, postage prepaid, to:

>Kimberly Bartenfelder, Pro Se Debtor
>1108 Harlon Way
>Bel Air, MD 21014;
>
>Rebecca Herr, Chapter 13 Trustee
>185 Admiral Cochrane Drive, Ste. 240
>Annapolis, MD 21401

with a courtesy copy e-mailed to Judge Alquist's chambers at

hearings_nva@mdb.uscourts.gov.


> _//s// Matthew J. McCarthy_____
> Matthew J. McCarthy (Bar No. 30767)

Exhibit A

# SETTLEMENT AGREEMENT

This Settlement Agreement ("Agreement") is entered into effective as of this _____ day of September, 2022 (the "Effective Date") by and among Baldwin|Seraina, LLC, a Maryland limited liability company ("Baldwin|Seraina") ; Brian Jablon and Wellens & Jablon, LLC, a Maryland limited liability company ("W&J"); and Kimberly Bartenfelder ("Kim") for the purpose of settling a pending controversy related to counsel fees claimed due by Baldwin|Seraina in connection with its representation of Kim in litigation pending before the Circuit Court for Harford County, Maryland captioned *Kimberly Bartenfelder v. Thomas Bartenfelder,* Case Number 12-C-17-000355 ("Litigation"), *Kimberly Bartenfelder v. Berkeridge Residential Services, LLC, et al.,* Case No. C-07-CV-21-000023, *Thomas Bartenfelder v. Kimberly Bartenfelder,* Case No. C-12-FM-22-807717, *and in connection with advice and assistance relating to In Re: Kimberly Bartenfelder,* Case No. 19-18119-NVA, *Kimberly Bartenfelder v. Thomas Bartenfelder, et al.* Case No.: 20-00255, *Thomas Bartenfelder v. Kimberly Bartenfelder,* Case No. 12-C-15-3264, and *Kimberly Bartenfelder v. Thomas Bartenfelder, et al,* Case Number C-12-22-000364. Unless otherwise set forth herein, the signatories to this Agreement may each be referred to individually as a "Party" or collectively as the "Parties."

## Explanatory Statement

WHEREAS, Kim has been involved in various lawsuits pending in the Circuit Court for Harford County, Maryland that include a divorce proceeding involving Thomas Bartenfelder (Case No. 12-C-15-0003264) and related business litigations (including the Litigation) arising in connection with the businesses Kim and Thomas Bartenfelder currently co-own, Bartenfelder Sanitation, Inc. and Bartenfelder Landscape, Inc., both Maryland corporations (the "Bartenfelder Companies"); and

WHEREAS, Brian Jablon and W&J have served as lead counsel for Kim in the Litigation, since August, 2017; and

WHEREAS, Stuart Seraina and Baldwin | Seraina undertook representation of Kim as co-counsel with Brian Jablon and W&J commencing on or about November, 2020, and subsequently entered their appearance on behalf of Kim on March 8, 2021. Baldwin|Seraina's appearance was subsequently withdrawn on or about June 17, 2022 and the firm continued, at Kim's request, to perform legal services in support of Brian Jablon's ongoing representation of Kim until on or about June 17, 2022; and

WHEREAS, at the time Baldwin|Seraina entered its appearance in the Litigation, Kim did not have funds available to pay Baldwin|Seraina or Brian Jablon and W&J, and

1

agreed to pay them their fees as funds became available to her; and

WHEREAS, Baldwin|Seraina asserts it is owed the amount of Two Hundred Sixty-Eight Thousand One Hundred Forty-Six Dollars ($268,146.00) (the "Baldwin|Seraina Fee Amount"); and

WHEREAS, Brian Jablon and W&J assert they are currently owed Two Hundred Forty Thousand Dollars ($240,000.00); and

WHEREAS, during the course of the Litigation, Baldwin|Seraina filed a Motion for Payment of Attorneys' Fees and Expert Witnesses from Company Funds, and on August 9, 2021, the Court granted the Motion, with payment of Kim's attorneys' fees, experts and court costs to be paid from funds from the Bartenfelder Companies (the "Fee Order"); and

WHEREAS, the Bartenfelder Companies were subsequently ordered to pay, and they did pay a total of Five Hundred Twenty-Six Thousand Nine Hundred Four Dollars and Eleven Cents ($526,904.11)(the "Fee Fund); and

WHEREAS, for health and other reasons, as a solo practitioner, Brian Jablon is not able to manage alone the workload generated by the complex issues in the Litigation, and Kim wishes to engage William N. Sinclair and the law firm of Silverman Thompson Slutkin White ("STSW") to serve as co-counsel to Brian Jablon; and

WHEREAS, STSW has required payment of a retainer in the amount of One Hundred Thousand Dollars ($100,000.00) before entering its appearance in the Litigation (the "STSW Retainer"); and

WHEREAS, the Fee Order directed that the STSW Retainer be paid from the Fee Fund, together with fees previously allowed to Dempsey Nash, Esq., Kim's former divorce counsel, in the amount of Sixty-Eight Thousand Five Hundred Sixty-Seven Dollars and Fifty Cents ($68,567.50); and

WHEREAS, on or about August 3, 2022, after asserting an attorneys' lien due to lack of payment of its fees, Baldwin|Seraina filed a Motion for Adjudication of Attorney's Lien, stating that the Fee Fund was insufficient to pay all of the attorneys' fees in the Litigation and requesting that the Court adjudicate Baldwin|Seraina's claim to funds in the Fee Fund before permitting payment of any claims from the Fee Fund (the "Baldwin|Seraina Motion"); and

2

WHEREAS, in response to the Baldwin|Seraina Motion, on August 11, 2022, the Court entered an Amended Order prohibiting payment of any claims from the Fee Fund, including the STSW Retainer, until the Court had addressed the Baldwin|Seraina Motion; and

WHEREAS, Kim is in need of counsel in the Litigation, and is without any alternate source of funds to retain new counsel because she is not receiving sufficient alimony from Thomas Bartenfelder, is unable to enter and/or operate the Bartenfelder Businesses, and has no other source of income of funds to retain counsel other than the Fee Fund; and

WHEREAS, the Parties, intending to avoid the cost and expense of a dispute over the respective fees owed to Kim's current and former attorneys, and, the parties agreeing that Kim needs representation both in the Litigation and her divorce proceedings, and having reached agreement for a distribution of fees from the Fee Fund, desire to enter into this Agreement.

NOW, THEREFORE, for good and valuable consideration, the Parties, intending legally to be bound, agree as follows:

1.   **Payment of Fees from Fee Fund**   The Parties agree that the following amounts shall be paid from the Fee Fund (by Brian Jablon serving as escrow agent) to the recipients listed below, with the payment of (a) $48, 336.61 to Kim and (b) the STSW Retainer material and sufficient consideration for Kim to enter into this Agreement and agree to its terms, as well as a condition of her agreement:

| Recipient | Payment Amount |
|---|---|
| Silverman Thompson Slutkin White | $100,000.00 |
| Baldwin\|Seraina, LLC | 150,000.00 |
| Brian Jablon/Wellens & Jablon | 150,000.00 |
| Dempsey Nash, Esq. | 68,567.50 |
| IT       expert retainer | 10,000.00 |
| Kimberly Bartenfelder[1] | 48,336.61 |
| Total | $526,904.11 |

---

[1] The $48,366.61 to be paid to Kim is to be used for payments of retainers for divorce counsel and other experts.

3

**2.**    **<u>Release of Attorneys' Lien and Withdrawal of Motion to Adjudicate Lien</u>**

Immediately upon the execution of this Agreement by all parties, Baldwin|Seraina shall prepare and file a Consent Motion withdrawing the Baldwin|Seraina Motion and seeking the entry of a Consent Order approving the payments set forth in this Agreement. Upon entry of the proposed Consent Order, Baldwin|Seraina shall immediately release its Attorneys' Lien.

**3.**    **<u>Payment of Balance to Seraina|Baldwin</u>**   Concurrently with the $150,000 payment to Baldwin|Seraina, Kim shall deliver to Baldwin|Seraina, by and through Brian Jablon, a Promissory Note in the amount of One Hundred Eighteen Thousand One Hundred Forty-Six Dollars ($118,146.00) in the form attached hereto as Exhibit A, which shall provide for payment in four (4) equal quarterly installments that will commence sixty (60) days after the earlier to occur of: (a) Kim receiving funds from a property award in her divorce case; (b) the closing of a transaction involving the purchase or sale by Kim of all or substantially all of her interest in any of her businesses, including the Bartenfelder Companies or 3341 Forge Hill, LLC; (c) settlement or judgment of either of Kim's corporate cases (including the Litigation or the "derivative action," Case Number C-12-22-000364); or (d) March 31, 2023.

**4.**    **<u>Indemnification</u>**   Each Party agrees to indemnify, defend and hold harmless the other Party (including such Party's respective subsidiaries, affiliates and any successors) from and against any and all liability or expense, including reasonable defense costs and legal fees, incurred in connection with any claims, causes of action or suits of any kind for damages of any nature arising from either Party's failure to perform its obligations under this Agreement; provided, however, that the breaching party shall not be entitled to attorneys' fees or defense costs of any kind incurred in connection with that party's failure to perform under this Agreement.

**5.**    **<u>Condition Precedent</u>**   The entry of a Consent Order authorizing all of the payments from the Fee Fund as set forth in paragraph 1 is a condition precedent to the Parties' agreement to the actions and payments contemplated herein, and the Parties specifically reserves all rights in the event that the Court does not approve all of these payments.

**6.**    **<u>Payment of Balance of Fees Owed to Brian Jablon</u>**   Kim and Brian Jablon both agree to work in good faith to reach a mutually agreeable agreement for the prompt payment of the balance of fees owed to Brian Jablon and W&J.

7.    **Permitted Disclosures**    The Parties shall keep the existence of this Agreement and its terms strictly confidential, provided, *however,* that: (a) Any Party may disclose this Agreement in confidence to its officers, attorneys, accountants, auditors, tax preparers, and financial advisors; (b) Any Party may disclose this Agreement insofar as such disclosure is made pursuant to a lawful court order, or such disclosure is made to enforce its terms, or as otherwise required by law, but only if notice of such disclosure is given to the other Parties at least ten (10) days before any proposed disclosure; The Parties acknowledge that, in the event of a breach or threatened breach of this Paragraph, the non-breaching Party shall be entitled to injunctive relief to enforce this Paragraph, and venue shall be proper in the Circuit Court for Baltimore County, Maryland.

8.    **Releases**    In consideration of the payments to be made hereunder, each Party hereby fully and completely forever releases and discharges the other Party and, as applicable, each such entity's respective subsidiaries, affiliates and any successors, including officers, employees, members, partners, directors, managers, stockholders, and agents) from any and all claims, actions, causes of action, suits, debts, dues, sums of money, accounts, reckonings, covenants, contracts, controversies, agreements, promises, variances, trespasses, damages, judgments, expenses, executions, affirmative defenses, demands and other obligations or liabilities whatsoever, in law or in equity, whether known or unknown, fixed or contingent, which any Party ever had, now has or may have against the other, based on or arising out of any matter, cause, act or omissions whatsoever, occurring or existing at any time up to and including the date hereof; provided, however, that the foregoing shall not release any Party from any obligation of any Party under any provision of this Agreement, including Kim's Promissory Note to Baldwin|Seraina, and this release shall not take effect in any respect whatsoever unless all conditions precedent to this agreement have been satisfied in full.

9.    **No Admission**. By reason of agreeing to this compromise and agreement, the Parties hereby deny liability of any and every sort and state they have made no agreement to do or omit to do any act or thing not set forth herein. They further state that this Agreement is entered as a compromise in order to avoid expense and to terminate all controversy growing out of or connected with the facts, matters or allegations concerning the attorneys' fees incurred the Litigation.

10.    **Governing Law**.    The law of the State of Maryland shall govern all questions concerning the construction, validity, interpretation and enforceability of this Agreement and the performance of the obligations imposed by this Agreement, without giving effect

5

to any choice of law or conflict of law rules or provisions (whether of Maryland or any other jurisdiction) that would cause the application of the laws of any jurisdiction other than Maryland. The Parties agree that the Circuit Court for Baltimore County, Maryland shall have jurisdiction for enforcement purposes over any material breach of this Agreement, and the Parties waive any objection to such jurisdiction including, but not limited to, inconvenient forum or lack of personal jurisdiction.

**11.** **Cooperation /Further Assurances**. The Parties agree to cooperate fully and to assist in a reasonable manner in taking any and all additional action which may be necessary or appropriate to give full force and effect to the terms and intent of this Agreement, which are not inconsistent with the terms of the Agreement, without further cost or expense (other than incidental) on the part of the other.

**12.** **Miscellaneous**. This Agreement is entered into to further each side's respective professional, personal, and financial interests, and to avoid the expense and inconvenience of further litigation. All parties have had input into the drafting of this Agreement, and this Agreement shall not be construed against any party as the drafter. This Agreement constitutes the full and complete understanding among the parties and replaces all prior negotiations, discussions, offers, representations, warranties, covenants and agreements of the Parties. Except as set forth herein, there are no other understandings or agreements related to the issues addressed herein. This Agreement may be amended only by a written instrument signed by all Parties. Each signatory hereto who is executing this Agreement on behalf of an entity represents and covenants that he or she is duly authorized to enter into this Agreement on behalf of such entity. This Agreement may be executed in e-mailed or faxed counterparts. The invalidity or unenforceability of any particular provision of this Agreement shall not affect the other provisions hereof.

**13.** **Notices**     Notices to the Parties pursuant to, or in connection with, this Agreement shall be given as follows:

   If to Kim Bartenfelder:   1108 Harlon Way
                  Bel Air, Maryland 21014

   With a copy to:

               Brian Jablon, Esq.
               Wellens & Jablon, LLC
               540 B&A Boulevard, Suite #2
               Severna Park, Maryland 21146

If to Baldwin|Seraina:

> Douglas B. Riley, Esq.
> Baldwin|Seraina, LLC
> 111 South Calvert Street, Suite 1805
> Baltimore, Maryland 21202

If to Brian Jablon:

> Brian Jablon, Esq.
> Wellens & Jablon, LLC
> 540 B&A Boulevard, Suite #2
> Severna Park, Maryland 21146

14. **Recitals**    The Recitals set forth above are hereby incorporated into this Agreement herein by reference and made a material part of this Agreement.

15. **WAIVER OF JURY TRIAL**  **THE PARTIES HEREBY KNOWINGLY, VOLUNTARILY, AND IRREVOCABLY WAIVE THEIR RIGHT TO A TRIAL BY JURY AND AGREE THAT ANY DISPUTE OR CLAIM ARISING HEREUNDER OR IN CONNECTION HEREWITH OR OTHERWISE RELATING TO THIS AGREEMENT SHALL BE DECIDED SOLELY BY A JUDGE (WITHOUT THE USE OF A JURY) SITTING IN A COURT OF COMPETENT JURISDICTION. THIS JURY TRIAL WAIVER PROVISION SHALL SURVIVE INDEFINITELY.**

IN WITNESS WHEREOF, the parties have executed, or caused this Agreement to be executed, under seal, as of the date set forth hereinabove.

WITNESS OR ATTEST:                    BALDWIN|SERAINA, LLC

_____            By:   _____
                                   Name:
                                   Title:

**[SIGNATURES CONTINUED ON NEXT PAGE]**

7

WELLENS & JABLON, LLC

By: _____

Name:

Title:

_____    10/14/22
KIMBERLY BARTENFELDER

8

If to Baldwin|Seraina:

Douglas B. Riley, Esq.
Baldwin|Seraina, LLC
111 South Calvert Street, Suite 1805
Baltimore, Maryland 21202

If to Brian Jablon:

Brian Jablon, Esq.
Wellens & Jablon, LLC
540 B&A Boulevard, Suite #2
Severna Park, Maryland 21146

14.    **Recitals**    The Recitals set forth above are hereby incorporated into this Agreement herein by reference and made a material part of this Agreement.

15.    **WAIVER OF JURY TRIAL  THE PARTIES HEREBY KNOWINGLY, VOLUNTARILY, AND IRREVOCABLY WAIVE THEIR RIGHT TO A TRIAL BY JURY AND AGREE THAT ANY DISPUTE OR CLAIM ARISING HEREUNDER OR IN CONNECTION HEREWITH OR OTHERWISE RELATING TO THIS AGREEMENT SHALL BE DECIDED SOLELY BY A JUDGE (WITHOUT THE USE OF A JURY) SITTING IN A COURT OF COMPETENT JURISDICTION. THIS JURY TRIAL WAIVER PROVISION SHALL SURVIVE INDEFINITELY.**

IN WITNESS WHEREOF, the parties have executed, or caused this Agreement to be executed, under seal, as of the date set forth hereinabove.

WITNESS OR ATTEST:                BALDWIN|SERAINA, LLC

By: _____
Name:  STUART MG SERAINA
Title:  PARTNER

**[SIGNATURES CONTINUED ON NEXT PAGE]**

7

9

**SCHEDULE A**

**Form of Note**

**[see attached]**

9

PROMISSORY NOTE

$118,146.00 USD
                                                        Baltimore, Maryland
                                                        September __, 2022

FOR VALUE RECEIVED, the undersigned, Kimberly Bartenfelder (hereinafter referred to as the "Maker"), intending to be legally bound, does hereby promise to pay to the order of Baldwin|Seraina, LLC, a Maryland limited liability company, at 111 South Calvert Street, Suite 1805, Baltimore, Maryland 21202, or such other place as Holder may designate in writing, in lawful money of the United States of America, the principal sum of One Hundred Eighteen Thousand One Hundred Forty-Six Dollars ($118,146.00) (the "Principal") (together with interest on the unpaid Principal balance at the rate hereinafter set forth, if applicable).

      1.   REPAYMENT. The Principal and Interest shall be due and payable as follows:

      1.1   Payments. Commencing sixty (60) days from the earliest to occur of the following: (a) Maker receiving funds from a property award in her divorce case pending in the Circuit Court for Harford County, captioned *Bartenfelder v. Bartenfelder,* Case No. 12-C-15-0003264; (b) the closing of a transaction involving the purchase or sale by Kim of substantially all of her interest in any of her businesses, including Bartenfelder Sanitation, Inc. and Bartenfelder Landscape, Inc., or 3341 Forge Hill, LLC, all Maryland entities; (c) settlement or judgment of either of Maker's pending corporate litigation cases pending in the Circuit Court for Harford County, Maryland (Case Number 12-C-17-000355 or Case Number C-12-CV-22-000364); or (d) March 31, 2023, Maker shall pay the Principal to Maker in four (4) equal quarterly installments. Each quarterly payment shall be due and payable on or before the 20th day of the first month of the quarter in which payment is due. Each payment shall be made in US Dollars and readily available funds.

      1.2   Interest. Interest shall accrue on the unpaid Principal at the rate of 5% per annum; provided, however, that interest shall only accrue following the occurrence of an Event of Default (as defined herein) and such Default has not been cured within any applicable cure period.

      2.   PREPAYMENT. The Maker shall have the right to prepay, in whole or in part the aforesaid Principal at any time without premium and penalty. Partial payments of this Note shall be applied first to accrued and unpaid interest and then to Principal.

      3.   PAST DUE PAYMENTS AND PRESENTMENT, ETC.

      3.1 The Maker shall pay (i) a late charge equal to ten percent (10%) of any payment not made within ten (10) days after the due date thereof, and (ii) costs of collection, including a reasonable attorney's fee if this Note is referred to an attorney for collection after

1

default, whether or not any action shall be instituted to enforce or collect this Note.  Time is of the essence hereof.

        3.2   Maker waives presentment and demand for payment, notice of intent to accelerate maturity, notice of acceleration of maturity, protest or notice of protest and non-payment, bringing to suit and diligence in taking any action to collect any sums owing hereunder or in proceeding against any of the rights and properties securing payment hereof.  From time to time, without affecting the obligation of the Maker to pay the outstanding Principal balance of this Note and to observe the covenants of the Maker contained herein, without affecting the duties and obligations of any endorser hereto, without giving notice to or obtaining the consent of the Maker or any endorser hereto or guarantor hereof, and without liability of the part of the Holder, the Holder may, at the option of the Holder, extend the time for payment of interest hereon and/or principal hereof, reduce the payments hereunder, release anyone liable on this Note, accept a renewal of this Note, modify the terms and time of payment of this Note, join in any extension or subordination or exercise any option or election hereunder, modify the rate of interest or period of amortization or Principal due date of this Note or exercise any option or election hereunder.  No one or more of such actions shall constitute a novation.

    4.   DEFAULT.

        4.1   The occurrence of any failure to make payment when due hereunder shall constitute an event of default under this Note (an "Event of Default").   Upon the occurrence of an Event of Default, Holder may, at its option, after providing Maker with notice of the default and a ten (10) day period to cure, declare the unpaid Principal balance and accrued interest on this Note at once due and payable, and file the Consent to Judgment attached to this Note as Exhibit 1.  Holder agrees that until an uncured Event of Default has occurred, the Consent to Judgment shall be held in escrow. Holder shall have the right, if Holder so elects, to rescind any acceleration in payment of this Note for default, as aforesaid, if Holder so elects, in which event this Note shall be construed, interpreted and enforced in the same manner as if Holder had never elected to declare the unpaid Principal balance and accrued interest of this Note at once due and payable.

        4.2   In addition to Section 4.1 and not in limitation thereof, it shall be deemed a default of this Promissory Note at the option of the Holder, if (i) proceedings are commenced either voluntarily or involuntarily against the Maker, in any court of competent jurisdiction under any applicable law concerning bankruptcy or insolvency acts or statutes, whether Federal or State; or (ii) the Maker dies, or (iii) the Maker becomes a "disabled person" as defined in the Estates and Trusts Article of the Annotated Code of Maryland, as amended from time to time.

    5.   EXERCISE OF RIGHTS. Failure to exercise any of the foregoing options upon the happening of one or more of the events provided in Article 4 hereof, shall not constitute a waiver of the right to exercise the same or any other option at any subsequent time in respect to the same or any other event, and no single or partial exercise of any right or remedy shall preclude other or

2

further exercise of the same or any other right or remedy.  Holder shall have no duty to exercise any or all of the rights and remedies herein provided or contemplated.  The acceptance by Holder of any payment hereunder that is less than payment in full of all amounts due and payable at the time of such payment shall not constitute a waiver of the right to exercise any of the foregoing options at that time, or at any subsequent time, or nullify any prior exercise of any such option without the express written consent of the Holder.

   5.   MISCELLANEOUS.

      5.1  Governing Law.  This Note shall be governed by and construed according to the laws of the State of Maryland, without regard to principles of conflict of laws.

      5.2  Notices.  All notices hereunder shall be given at the following addresses: if to Holder, at the address listed herein; if to Maker, at 1108 Harlon Way Bel Air Maryland 21014. Either party may change their address for notice purposes upon giving fifteen (15) days prior notice thereof in accordance with this Section 9.2. All notices given hereunder shall be in writing and shall be considered properly given if mailed by first class United States Mail, postage prepaid, registered or certified with return receipt requested, or by delivering same in person to the intended addressee.  Any notice mailed as above provided shall be effective upon its deposit in the custody of the U.S. Postal Service; notice personally delivered shall be effective upon receipt.

      5.3  Captions.  All Article and Section headings herein are for convenience only and shall not be interpreted to enlarge or restrict the provisions of this Note.

      5.4  Time.  Time shall be of the essence.


   Executed in Baltimore, Maryland, as of the date and year first above written.


WITNESS:                                              MAKER

                                                     _Kimberly Bartenfelder_ 10/4/22 (SEAL)
_____                               Kimberly Bartenfelder

3

14

Exhibit B



E-FILED; Baltimore County Circuit Court
Docket: 2/20/2025 3:00 PM; Submission: 2/20/2025 2:36 PM
Envelope: 20047157

**CIRCUIT COURT OF MARYLAND FOR BALTIMORE COUNTY**
401 Bosley Avenue, P.O. Box 6754, Towson, MD, 21285-6754
Main: 410-887-2601

Case Number: C-03-CV-24-003799
Other Reference Number(s):

BALDWIN LEGAL GROUP, LLC VS. KIMBERLY BARTENFELDER

## ORDER OF DEFAULT

The Court enters an Order of Default against   Kimberly Bartenfelder                              for

failure to file a responsive pleading to:   Complaint for Breach of Contract
                                          Name of complaint/petition/motion

and orders that testimony to support the allegations of the compliant to be taken before

☒   one of the judges or   ☐   magistrate of the court.

2/20/2025
Date

Judge Keith R. Truffer

**Entered: Clerk, Circuit Court for
Baltimore County, MD
February 20, 2025**

CC-DR-054JO (Rev. 01/2020)                    Page 1 of 1                    2/20/2025 11:49 AM

Exhibit C

E-SERVED Baltimore County Circuit Court 9/23/2025 2:05 PM System SystemEnvelope:23055754
Case 25-20691   Doc 32   Filed 12/15/25   Page 31 of 50

E-FILED; Baltimore County Circuit Court
Docket: 9/23/2025 2:05 PM; Submission: 9/23/2025 2:05 PM
Envelope: 23055754

# CIRCUIT COURT FOR BALTIMORE COUNTY
### THIRD JUDICIAL CIRCUIT OF MARYLAND

SHERRIE R. BAILEY
JUDGE

COUNTY COURTS BUILDING
TOWSON, MARYLAND 21204
410-887-2630

## CHAMBERS RULING

Case Name:  Baldwin Legal Group, LLC vs. Kimberly Bartenfelder          Case No.:  C-03-CV-24-003799

Date of Filing: 10-09-2024
Date of Summons: 12-23-2024
Date Served: 01-10-2025

Time to Respond:
☒ 30 days standard (Md. Rule 2-321(a))
☐ 60 days standard (Md. Rule 2-321(b)(1)-(4))
☐ 90 days outside country (Md. Rule 2-321(b)(5))

☒ **Request for Order of Default GRANTED**
☐ **Request for Order of Default DENIED for the following reasons:**

☐ No proof of service or proof of service is insufficient
    ☐ No affidavit of service or Sheriff's return
    ☐ Affidavit missing  ☐ description of person served  ☐ date of service  ☐ location of service
        ☐ manner of service (Md. Rule 2-126(a)(1))
    ☐ If mailed, not mailed by Certified Mail requesting Restricted Delivery (Md. Rule 2-121(a)(3))
    ☐ If service by Certified Mail, missing Original Return Receipt (green card) (Md. Rule 2-126(a)(3))
    ☐ Proof of service by Posting or Publication not provided (Md. Rule 2-126(b))
        ☐ No Certification from publisher provided
        ☐ No copy of publication or posted notice provided
    ☐ Does not indicate: ☐ summons ☐ complaint ☐ other: _____ served (Md. Rule 2-121(a))

☐ Last known address of Defendant is not provided with Request (Md. Rule 2-613(b))

☐ Non-military Affidavit is insufficient
    ☐ Non-military affidavit is not provided
    ☐ Non-military affidavit is not signed by affiant (Md. Rule 1-304; 50 U.S.C. Appx §521))
    ☐ Necessary facts (e.g., Defendant's age, residence, employment and approximate length of time
Defendant employed at present employment) or, alternatively, a copy of the Department of Defense
Manpower Data Center's Military Status Report, have not been provided to support affidavit and show
how affiant has knowledge of Defendant's non-military status (50 U.S.C. Appx §521(b)(1))

☐ Writ of Summons is missing or insufficient
    ☐ Summons is not in file or provided with Request (Md. Rule 2-126(e))
    ☐ Summons expired because service not made within 60 days of the date summons was issued (Md.
Rule 2-113)

☐ Time to respond to pleading has not expired (Md. Rule 2-321)

☐ Answer has been filed
    ☐ Answer was filed on _____  Pleading # _____
    ☐ Answer previously filed shall be treated as the answer to the amended pleading (Md. Rule 2-341(a))

☐ Other/Comments: _____
_____
_____
_____

09-18-2025
Date

Sh R Bailey
Hon. Sherrie R. Bailey
Judge, Circuit Court for Baltimore County

Entered: Clerk, Circuit Court for
Baltimore County, MD
September 23, 2025

Exhibit D

E-FILED; Baltimore County Circuit Court
Docket: 10/17/2025 5:17 PM; Submission: 10/17/2025 5:17 PM
Envelope: 23419549

## IN THE CIRCUIT COURT FOR BALTIMORE COUNTY, MARYLAND

BALDWIN LEGAL GROUP, LLC,    *

    Plaintiff,   *

v.   *

                            CASE NO:  C-03-CCV-24-003799

KIMBERLY BARTENFELDER   *

    Defendant.   *

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## MOTION TO VACATE ORDER OF DEFAULT
## AND TO VOID CONTRACT EXECUTED UNDER DURESS

COMES NOW, Kimberly Bartenfelder, ("Mrs. Bartenfelder"), *pro se* and respectfully moves this Honorable Court to vacate the default judgment entered against her and to declare void a contract executed under duress, pursuant to Maryland 2-613(d) and (e), and applicable common law principles of contract invalidation. Mrs. Bartenfelder further requests a hearing on the merits of this motion. In support thereof, she states as follows:

1.     This is a case by a law firm, plaintiff Baldwin Legal Group, LLC ("BLG"), against their former client Kimberly Bartenfelder on a so called promissory note that BLG's predecessor forced Mrs. Bartenfelder to sign under duress.

2.     Rule 2-613 states:

(d)Motion by defendant. — The defendant may move to vacate the order of default within 30 days after its entry. The motion shall state the reasons for the failure to plead and the legal and factual basis for the defense to the claim.

(e) Disposition of motion. — If the court finds that there is a substantial and sufficient basis for an actual controversy as to the merits of the action and that it is equitable to excuse the failure to plead, the court shall vacate the order.

3.      Following are the facts showing the reasons for Mrs. Bartenfelder's failure to

plead and factual and legal basis for the defense to Plaintiff's claim.

## I.      Failure to file Pleading.

The reason Mrs. Bartenfelder did not plead is that she was not *personally* served in this

case and there has been a bankruptcy proceeding pending since January 2025. See attached email

Exhibit 1 (with a cc to Mrs. Bartenfelder) informing Plaintiff that the stay was in effect and it

was not entitled to collect monies from Mrs. Bartenfelder.

## II.      Procedural Background

•      A default judgment was entered against Defendant during a period in which she

was deprived of legal representation due to wrongful interference and coercion by former

attorneys related to this law firm.

•      The deprivation of counsel was directly caused by a contract signed under duress,

which obstructed Mrs. Bartenfelder's ability to retain new representation, defend her interests

and caused irreparable harm to Mrs. Bartenfelder's Corporations.

## III.      Contract Executed Under Duress

Mrs. Bartenfelder asserts that the contract in question is void and unenforceable due to the

following defenses:

## 1.      Wrongful Threat and Pressure

- Mrs. Bartenfelder was entirely coerced into signing this adhesion contract under threat of continued obstruction and delay in her litigation.

- Attorneys Stuart Seraina and Dempsey Nash were terminated for unethical billing practices and were threatened with malpractice claims by Mrs. Bartenfelder and derivative actions against these lawyers on behalf of the Bartenfelder entities.

- Legal fees were never properly assessed or deemed reasonably incurred in connection with the case. They were further entirely disputed based on wrongful billing and inefficient representation.

- The contract was presented as a condition for releasing funds necessary to retain new counsel, at a time when Mrs. Bartenfelder's lead attorney had just had a stroke and was unable to practice law at this imperative time. Lack of any financial resources further constituted economic coercion.

## IV.    Lack of Free Will

- At the time of signing, Mrs. Bartenfelder had zero access to martial assets nor company funds due to a lien placed by Seraina and Nash who are boyfriend and girlfriend.

- Furthermore, Mrs. Bartenfelder was recovering from extensive surgery related to cancer treatment, under the influence of strong narcotics further impairing her capacity to make informed decisions. In addition, she was dealing with a life threatening concern of metastatic cancer spread and was so mentally distraught that it was beyond malicious and cruel to have subjected Mrs. Bartenfelder to these pressures when she clearly was not in sound mind.

- As such, the circumstances deprived Mrs. Bartenfelder of any meaningful ability to exercise free will or negotiate terms.  She was literally backed into a corner and was not even able to have counsel guide her.

**LACK OF CAPACITY** – Mrs. Bartenfelder's physicians will validate that she lacked the capacity to sign anything during this time and that the stress that was being placed under was compromising her health and clearly unconscionable.

2. **No Reasonable Alternative**

- Mrs. Bartenfelder had no practical alternative to retain counsel unless she agreed to a contract she vehemently opposed.

- Her objections were documented in contemporaneous emails, expressing that the agreement felt coercive and like criminal extortion.

- The contract lacked any mutual consent and therefore was clearly not freely negotiated.

3. **Causal Link to Default Judgment**

- The duress and obstruction directly compromised Mrs. Bartenfelder's ability to participate in extremely complex litigation and further directly cause her irreparable harm and the businesses that Stuart Seraina was supposed to protect irreparable harm.

- Mrs. Bartenfelder was not only deprived of legal representation and experts' fees due to this agreement where there was absolutely no meeting of the minds.

- The attorney who drafted the agreement expressed concern that Seraina and Nash's conduct was unethical and likely impermissible under judicial scrutiny.

V. **Evidence Supporting Motion**

- Emails documenting objection to the contract and threats of malpractice

- Medical records confirming surgery and recovery period

- Billing records showing lack of substantive legal work

- Copy of the contract with handwritten strike-throughs indicating non-consent

- Statement from drafting attorney regarding unethical conduct

- Timeline showing Brian Jablon as sole active counsel

**FALSE ON ITS FACE**

When this so-called agreement is scrutinized the lines through the document are clear. That was literally striking out the document in its entirety. Furthermore, the one attorney Brian Jablon Esquire, who also was medically unfit at this time, also failed to sign the contract. Lastly, there is a section next to my name which doesn't even look like my signature, however, requires a notary. This is missing from this document.

**V.      Legal Basis**

Under Maryland law, a contract is voidable when entered under duress, defined as wrongful threats that deprive a party of free will and leave no reasonable alternative. The default judgment entered during the aftermath of this coercion is procedurally unjust and must be vacated to preserve due process.

**VI.      Further Argument**

The funds that were initially transferred to Stuart Seraina Esquire and Dempsey Nash Esquire gave rise from businesses owned by Kimberly Bartenfelder. Bartenfelder Sanitation Services, Inc. and Bartenfelder Landscape Services, Inc. At the time this adhesion contract was signed, there was an appeal pending whether the business assets can be used to pay for attorney's fees in

case number 12-C-17-355.  The Appellate Court of Maryland In *Bartenfelder* v. *Bartenfelder*, issued an Opinion on October 25, 2022, which unequivocally stated that the Business assets could not be legally used.  Therefore, the funds initially transferred at the time this adhesion contract was executed gave rise from property that legally these attorneys by law are required to have maintained in their escrow account.  As the owner of these companies, Mrs. Bartenfelder demands that these funds be returned to the Circuit Court registry so that they can be returned to the companies in accordance with the mandate.  Furthermore, the issues related to counsel fees required being adjudicated in the cases pending in Harford County which pertain to attorney's fees reasonably incurred in connection with the cases at hand and whether bad faith attorney's fees should be provided to the prevailing party.

### VII.    Prayer for Relief

WHEREFORE, Kimberly Bartenfelder respectfully requests that this Honorable Court:

1.    Vacate the default judgment entered against her;

2.    Declare the contract void and unenforceable due to duress;

3.    Schedule a hearing on the merits of this motion;

4.    Grant leave to file responsive pleadings;

5.    Award such other and further relief as justice may require.

Respectfully submitted,

October 17, 2025

_____/s/___
Kimberly Bartenfelder
1108 Harlon Way
Bel Air, MD  21014
bart.uv.war@gmail.com

410-459-0650
Debtor, Kimberly Bartenfelder, *Pro Se*

## AFFIDAVIT/VERIFICATION OF KIMBERLY BARTENFELDER

I DO SOLEMNLY affirm under the penalties of perjury that: I have read the foregoing motion, and the matters and facts set forth in this Motion are true and correct to the best of my knowledge, information, and belief.

October 17, 2025                                   ____/s/____
                                                   Kimberly Bartenfelder
                                                   1108 Harlon Way
                                                   Bel Air, MD  21014
                                                   bart.uv.war@gmail.com
                                                   410-459-0650
                                                    Debtor, Kimberly Bartenfelder, *Pro Se*

## REQUEST FOR EMERGENCY HEARING

Kimberly Bartenfelder requests that this Motion, to Vacate this default Judgment be scheduled for a hearing as soon as possible

October 17, 2025                                   ____/s/__
                                                   Kimberly Bartenfelder
                                                   1108 Harlon Way
                                                   Bel Air, MD  21014
                                                   bart.uv.war@gmail.com
                                                   410-459-0650
                                                    Debtor, Kimberly Bartenfelder, *Pro Se*

## CERTIFICATE OF SERVICE

I hereby certify that on this 17st day of October 2025, a copy of this foregoing motion was served via MDEC on Matthew J. McCarthy with McCarthy Legal & Consulting, Inc. 9466 Georgia Avenue #1037, Silver Spring, MD  20910, email address  listed as Mccarthy.legal.inc@gmail.com and appearing as Counsel for Baldwin Legal Group, LLC. This foregoing motion was further filed upon any other party or counsel identified in the initial mdec filing.


October 17, 2025                                         ____/s/__
                                                        Kimberly Bartenfelder
                                                        1108 Harlon Way
                                                        Bel Air, MD  21014
                                                        bart.uv.war@gmail.com
                                                        410-459-0650
                                                        Debtor, Kimberly Bartenfelder *Pro Se*

Exhibit E

## IN THE CIRCUIT COURT FOR BALTIMORE COUNTY

**BALDWIN LEGAL GROUP, LLC**      &#42;
111 South Calvert Street, Suite 1805
Baltimore, Maryland 21202      &#42;      Case No.: <u>C-03-CV-24-003799</u>

       *Plaintiff,*      &#42;

v.      &#42;

**KIMBERLY BARTENFELDER**      &#42;

       *Defendant.*      &#42;

&#42;    &#42;    &#42;    &#42;    &#42;    &#42;    &#42;    &#42;    &#42;    &#42;    &#42;    &#42;    &#42;    &#42;

### OPPOSITION TO DEFENDANT'S
### MOTION TO VACATE THE ORDER OF DEFAULT

On October 17, 2025, Kimberly Bartenfelder filed a Motion to Vacate an Order of Default that this Court issued due to her failure to answer the Complaint in this case despite more than fifty (50) days to do so. She provides only easily refuted excuses as to why she should not have to recognize this Court's jurisdiction, all of which are easily refuted by the evidence, the law, and the available record.

Consequently, Baldwin Legal Group, LLC requests that the Motion to Vacate be denied.

**I.**     **Kimberly Bartenfelder was duly served the summons, complaint, and all other papers filed with it, yet did not file an answer despite ample time to do so.**

In relevant part, Rule 2-121(a) reads:

… . Service of process may be made within this State or, when authorized by the law of this State, outside of this State (1) by delivering to the person to be served a copy of the summons, complaint, and all other papers filed with it; (2) if the person to be served is an individual, by leaving a copy of the summons, complaint, and all other papers filed with it at the individual's

1

dwelling house or usual place of abode with a resident of suitable age and discretion; or (3) <u>by mailing to the person to be served a copy of the summons, complaint, and all other papers filed with it by certified mail requesting: "Restricted Delivery--show to whom, date, address of delivery." Service by certified mail under this Rule is complete upon delivery</u>. Service outside of the State may also be made in the manner prescribed by the court or prescribed by the foreign jurisdiction if reasonably calculated to give actual notice.

Plaintiff Baldwin Legal Group, LLC ("Plaintiff") served Kimberly Bartenfelder ("Defendant") by mailing to her a copy of the summons, complaint, and all other papers filed with it by certified mail, restricted delivery to "Kimberly Bartenfelder" at her address of record. The U.S. Postal Service confirms that it delivered the summons, complaint, and other papers included in the mailing—as stated in the USPS confirmation, "First-Class Mail," "Certified Mail Restricted Delivery"—on January 10, 2025. Exh. A at 1-3.[1] Service upon Defendant was complete on January 10, 2025. Rule 2-121(a)(3).

In accordance with Rule 2-121, service by certified mail was "complete upon delivery." Defendant's allegation that she was "not served personally" is easily refuted by the Postal Service's confirmation, the Affidavit of Service, and attached documents. Motion to Vacate at 2.

On January 29, 2025, filed for Chapter 13 bankruptcy in the U.S. Bankruptcy Court for the District of Maryland ("Bankruptcy Court"), apparently to avail herself of the automatic stay. In support of this assertion, Plaintiff cites the U.S. Trustee's statement that Defendant "fail[ed] to appear at both the scheduled Meeting of Creditors and

---

[1]    All exhibits referenced in this motion are attached to the Affidavit of Matthew J. McCarthy in Opposition to Defendant's Motion to Vacate.

confirmation hearing" for her bankruptcy. Exh. B at 1. Defendant did not inform Plaintiff

of her bankruptcy filing or the imposition of an automatic stay, nor was Plaintiff named

as a creditor in Defendant's bankruptcy. See, e.g., Ex. C; Aff. of Matthew McCarthy at

¶5. Plaintiff proceeded to request an Order of Default, which this Court first issued on

February 20, 2025 ("February Order"). Exh. D. Because the automatic stay was in place

at the time, the February Order was *void ab initio*. See, e.g., *Kochhar v. Bansal*, 222

Md.App. 32 (Md. App. 2015). Accordingly, Plaintiff submitted a motion to stay these

proceedings after learning of the automatic stay, which this Court granted. Exh. E.

On August 3, 2025, Plaintiff filed a motion before the Bankruptcy Court seeking

annulment of the automatic stay to validate the February Order. This motion remains

pending before the Bankruptcy Court.

On August 21, 2025, the Bankruptcy Court dismissed Defendant's bankruptcy

petition and lifted the automatic stay, noting that Defendant "has not complied with any

of [the Bankruptcy Court's] requirements." Exh. F at 2. With the stay then lifted, Plaintiff

requested an Order of Default for the second time on September 17, 2025. This Court

granted the request and issued the current Order of Default on September 23, 2025.

Subtracting the time period in which the present case was stayed due to pending

bankruptcy proceedings, Defendant had fifty-three (53) days to file an answer to the

Complaint but did not do so.

Moreover, Defendant has not included in her Motion any reason as to why

Defendant could not or did not file an answer. Rule 2-613(d) requires that the present

Motion to Vacate "shall state the reasons for the failure to plead and the legal and factual

3

basis for the defense to the claim." Defendant's Motion to Vacate is devoid of any reason for the failure to plead. Accordingly, the Order of Default should not be vacated.

## II.   Defendant has not presented any valid legal or factual basis for the defense to the claim.

Defendant has no genuine "legal and factual basis for the defense to the claim." Defendant appears to argue—for the very first time regarding an agreement signed more than three years ago—that she signed the underlying promissory under duress and that it should be voided accordingly. This argument is neither supported by the facts nor Defendant's brand new allegations.

Furthermore, the underlying agreement and promissory note signed by Defendant refute Defendant's allegations of duress, which would require "(1) [a] wrongful act or threat by the opposite party to the transaction or by a third party of which the opposite party is aware and takes advantage, and (2) a state of mind in which the complaining party was overwhelmed by fear and precluded from using free will or judgment." *Food Fair Stores, Inc. v. Joy*, 283 Md. 205, 216 (1978) (citing *Plechner v. Widener College, Inc.*, 418 F.Supp. 1282, 1294 (E.D.Pa.1976)). The decisive question in this regard is whether the person claiming duress entered the particular transaction in such fear as to preclude his exercise of free will and judgment. *Food Fair Stores, Inc.*, 283 Md. at 218 (citing Restatement of Contracts § 472, Comment a (1932)).

Here, Defendant does not allege any wrongful act or threat or that she entered the transaction in fear. Instead, she alleges that she "had no practical alternative to retain counsel" but still entered into the Agreement of her own free will. Motion to Vacate at 4.

4

Although Plaintiff extends to Defendant all well wishes for her health and recovery, her allegations—even if taken as true—would not support the conclusion that the underlying promissory note and Agreement were voidable as signed under duress.

Contrary to her present assertions which attempt to renounce the Agreement and promissory note, Defendant previously agreed and acknowledged that the settlement terms were fair, permanent, and designed to terminate all future controversy. In pertinent part, the Agreement states:

> This Settlement Agreement ("Agreement") is entered into ... by and among Baldwin|Seraina, LLC, a Maryland limited liability company [Plaintiff's former d/b/a name]; ... and Kimberly Bartenfelder ("Kim") for the purpose of settling a pending controversy related to counsel fees claimed due by [Plaintiff] in connection with its representation of Kim in litigation pending before the Circuit Court of Harford County, Maryland captioned Kimberly Bartenfelder v. Thomas Bartenfelder, Case Number 12-C-17-000355 ("Litigation"), ... [and six additional cases named in the Agreement's preamble]. ...
>
> [...]
>
> WHEREAS, Kim is in need of counsel in the Litigation, and is without any alternate source of funds to retain new counsel because she is not receiving sufficient alimony from Thomas Bartenfelder, is unable to enter and/or operate the Bartenfelder Businesses, and has no other source of income of funds to retain new counsel other than the Fee Fund; and
>
> WHEREAS, the Parties, intending to avoid the cost and expense of a dispute over the respective fees owed to Kim's current and former attorneys, and, the parties agreeing that Kim needs representation both in the Litigation and her divorce proceedings, and having reached agreement for a distribution of fees from the Fee Fund, desire to enter into this Agreement.
>
> NOW, THEREFORE, for good and valuable consideration, the Parties, intending legally to be bound, agree as follows:
> ...

5

**3. <u>Payment of Balance to [Plaintiff]</u>** Concurrently with the $150,000 payment to [Plaintiff], Kim shall deliver to [Plaintiff], … a Promissory Note in the amount of One Hundred and Eighteen Thousand One Hundred Forty-Six Dollars ($118,146.00) in the form attached hereto as Exhibit A, …

[…]

**11. <u>Cooperation /Further Assurances</u>**.  The Parties agree to cooperate fully and to assist in a reasonable manner in taking any and all additional action which may be necessary or appropriate to give full force and effect to the terms and intent of this Agreement, which are not inconsistent with the terms of the Agreement, without further cost or expense (other than incidental) on the part of the other.

**12. <u>Miscellaneous</u>.** This Agreement is entered into to further each side's respective professional, person, and financial interests, and to avoid the expense and inconvenience of further litigation. All parties have had input into the drafting of this Agreement, … . This Agreement constitutes the full and complete understanding amongst the parties and replaces all prior negotiations, discussion, offers, representations, warranties, covenants and agreements of the Parties. …

[…]

**14. <u>Recitals</u>** The recitals set forth above are hereby incorporated into this Agreement herein by reference and made a material part of this Agreement.

Exh. G at 1-7. By her own hand, through her own signature, Defendant made a permanently binding agreement to pay on the terms outlined in the promissory note. She now presents no valid reasons as to why the terms she agreed to should not be now honored.

In addition to this, the Complaint at issue was no sudden surprise. Plaintiff contacted Defendant several times to collect and sent Defendant a Final Demand for Payment on November 18, 2024 before filing suit. Exh. H; I.

Defendant has filed a still-pending motion before the Bankruptcy Court to reinstate the automatic stay that was lifted upon the Bankruptcy Court's dismissal of her petition. Exh. J. Defendant now apparently hopes that the Bankruptcy Court will continue to stay all collection actions against her and seeks to vacate the Order of Default as part of an effort to "play for time." Defendant seeks to distract this Court and delay proceedings in hopes that the Bankruptcy Court will once again impose an automatic stay that would allow Defendant to further avoid liability under the promissory note at issue here, which is already nearly three (3) years past due.

### III. The Plaintiff respectfully encourages this Court to prohibit Defendant from repeating before this Court a pattern of behavior that have needlessly and unjustifiably brought other court proceedings to a standstill.

The case termed "the Litigation" in the Agreement and promissory note—case no. 12-C-17-000355—is still before the Circuit Court for Harford County. In the present case, Defendant attempts to repeat a pattern of making submissions to the Court designed to bring proceedings to a standstill rather than move them towards resolution.

In the Litigation, Defendant brought motions to disqualify the presiding judge and her husband's counsel. Both of these motions were denied. Exh. K; L. The presiding judge later made a finding that Defendant is a "vexatious litigant" and enjoined her from any further filings in her own case unless the judge authorizes such filing. Exh. M at 1. Defendant, as memorialized in a series of e-mails in the Litigation case file, has even gone so far as to argue with the judge's assistant as to what day of the week it was when the judge's chambers sought to give Defendant a courtesy notice as to the date of an upcoming hearing. Exh. N at 1. Plaintiff respectfully requests that the Court disallow

Defendant the opportunity to sow similar chaos in the present case and hold the Defendant as strictly to the rules as it would any other litigant.

## IV.     Request for Relief

Defendant was duly served in accordance with the applicable rule. She did not timely respond despite more than 50 days to do so and has offered no reasons as to why she did not do so. Instead, Defendant responds with defenses that are inapplicable and unsupported by the evidence submitted or found elsewhere in the record. Defendant's pattern of vexatious litigation should not be entertained at this Court. The applicable rules are plain and unambiguous and alerted Defendant of all deadlines and obligations. Despite this, Defendant has failed to timely answer Plaintiff's complaint. Accordingly, Plaintiff respectfully requests that this Court deny the Motion to Vacate.

A proposed order is attached.

Respectfully submitted,

_//s// Matthew J. McCarthy_ _____
Matthew J. McCarthy (CPF No. 1812040008)
McCarthy Legal & Consulting, P.C.
9466 Georgia Avenue, #1037
Silver Spring, MD  20910
Telephone (301) 550-1709
mccarthy.legal.inc@gmail.com

_Attorneys for Plaintiff_
_Baldwin Legal Group, LLC_

8

## CERTIFICATE OF SERVICE

I hereby certify that on October 24, 2025, a true and correct copy of the foregoing

Motion was served via MDEC on all counsel of record.


_//s// Matthew J. McCarthy_
Matthew J. McCarthy (CPF No. 1812040008)